IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Rhett F. McCraw,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>WJ StrutCo, Inc., Benjamin Rutledge Wall, II, Benjamin Rutledge Wall II Revocable Trust, George Dean Johnson, Jr., George Dean Johnson, Jr. Revocable Trust, Dan C. Breeden, Jr., Susanna Presnell Johnson ESA Trust, and George Dean Johnson, III ESA Trust,<br><br>　　　　　　　　Defendants. | **COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Rhett F. McCraw ("Plaintiff" or "McCraw"), by and through undersigned counsel, hereby files this complaint against Defendants WJ StrutCo, Inc ("StrutCo"), Benjamin Rutledge Wall, II ("Wall"), Benjamin Rutledge Wall II Revocable Trust (the "Wall Trust"), George Dean Johnson, Jr. ("Johnson"), George Dean Johnson, Jr. Revocable Trust (the "Johnson Trust"), Dan C. Breeden, Jr. ("Breeden"), Susanna Presnell Johnson ESA Trust (The "SPJ ESA Johnson Trust", and George Dean Johnson, III ESA Trust (the "GDJ ESA Trust") and alleges as follows:

### NATURE OF THE ACTION

1.　　This is a shareholder oppression matter involving, among other things, the wrongful and retaliatory actions taken against McCraw by StrutCo and its controlling majority stockholders in response to McCraw voluntarily leaving the employment of an affiliate of StrutCo on January 22, 2024.

2.　　StrutCo is a Delaware general corporation and the parent company of Power Utility Products, Co ("PUPCO"), which is a distribution business. Specifically, PUPCO is a master

distributor of critical components for the electrical, waterworks, PVF, and telecom infrastructure end-markets. With locations in Charlotte, North Carolina, Alburquerque, New Mexico, Chicopee, MA, and North Jackson, Ohio, PUPCO serves a national customer base, including power plants, data centers, solar farms, and healthcare facilities, as well as 4G and 5G infrastructure and industrial construction projects.[1]

3. Upon information and belief, Wall is a co-founder and managing partner of WJP Partners, LLC ("WJP"), a private investment firm located in Spartanburg, South Carolina.

4. Upon information and belief, Wall is also the secretary of and serves on the board of directors for PUPCO and the board of directors for StrutCo.

5. Upon information and belief, at all times relevant to this action, Wall was the trustee of the Wall Trust.

6. Upon information and belief, the Wall Trust owns 40% of the Class A StrutCo Shares. As trustee of the Wall Trust, Wall therefore controls 40% of the Class A StrutCo Shares.

7. Upon information and belief, the Johnson Trust, SPJ ESA Trust, and GDJ ESA Trust collectively own 40% of the Class A StrutCo Shares. As trustees of the SPJ ESA Trust and GDJ ESA Trust, Johnson and Breeden collectively control 40% of the Class A StrutCo Shares.

8. Together, Wall, the Wall Trust, Johnson, the Johnson Trust, Breeden, the SPJ ESA Trust, and the GDJ ESA Trust are hereinafter collectively referred to as the "Controlling Majority Stockholders."

---

[1] *See* https://www.wjpartners.com/power-utilityproducts

9. McCraw owns 40 Class A StrutCo Shares. Upon information and belief, McCraw owns 4% of the Class A StrutCo Shares.

10. StrutCo is governed by the Stockholders Agreement dated as of March 1, 2019 (the "StrutCo Stockholders Agreement"). A copy of the StrutCo Stockholders Agreement is attached hereto and incorporated by reference as **Exhibit 1**.[2]

11. This action arises from certain breaches of contract, breaches of fiduciary duties, and civil conspiracy committed by Defendants which caused injury to McCraw. McCraw also asserts a claim for declaratory judgment concerning the plain language of the StrutCo Stockholders Agreement.

### PARTIES, VENUE & JURISDICTION

12. Plaintiff Rhett F. McCraw is a citizen and resident of Davidson County, Tennessee.

13. Upon information and belief, StrutCo was, at the time of the commencement of this action, and still is, a Delaware corporation, doing business at all relevant times in Spartanburg County, South Carolina. Therefore, StrutCo is a citizen of both South Carolina and Delaware.

14. Upon information and belief, Wall is a resident and citizen of Spartanburg County, South Carolina.

15. Accordingly, upon information and belief, the Wall Trust is a citizen of Spartanburg County, South Carolina.

16. Upon information and belief, Johnson is a resident and citizen of Spartanburg County, South Carolina.

---

[2] According to its terms, the StrutCo Stockholders Agreement is governed in all respects by the laws of Delaware, as if the agreement was made and was to be performed entirely within that state between residents of that state. [*Id.* § 11.6].

17. Accordingly, upon information and belief, the Johnson Trust is a citizen of South Carolina.

18. Upon information and belief, Breeden is a resident and citizen of Spartanburg County, South Carolina.

19. Accordingly, upon information and belief, the SPJ ESA Trust and the GDJ ESA Trust are citizens of Spartanburg County, South Carolina.

20. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 as specified in 28 U.S.C. § 1332, and every issue of law and fact is wholly between citizens of different states. StrutCo. and McCraw's StrutCo Class A StrutCo Class A Shares are each worth far more than $75,000.00.

21. This Court has subject matter jurisdiction over the causes of action alleged herein.

22. This Court has personal jurisdiction over the parties, as StrutCo is headquartered in Spartanburg County, South Carolina and conducted business in Spartanburg County, South Carolina during the relevant time. Further, Wall, the Wall Trust, Johnson, The Johnson Trust, Breeden, the SPJA ESA Trust, and the GDJ ESA Trust are all, upon information and belief, residents and/or citizens of Spartanburg, South Carolina, and these Defendants all conducted business in Spartanburg County, South Carolina during the relevant time. Finally, the causes of action set forth herein against Defendants are related to a contract between the parties to be performed in South Carolina, breaches of said contract which occurred in South Carolina, and other wrongful acts or omissions on the part of Defendants which occurred in South Carolina.

23. Venue is proper in this District and in the Spartanburg Division pursuant to 28 U.S.C. § 1391(b)(2) and Local Civ. Rule 3.01(A)(1)(D.S.C.) and because a substantial part of

the events or omissions giving rise to the claim occurred in Spartanburg County, South Carolina.

**FACTS**

24. While employed by WJP, McCraw invested $91,876.00 in StrutCo and, in return, received 40 Shares of Class A Common Stock (Collectively, the "StrutCo Class A Shares").[3]

25. In connection with his investment and purchase of the StrutCo Class A Shares, McCraw executed and is a party to the StrutCo Stockholders Agreement.

26. On Monday, January 22, 2024, McCraw resigned from his employment with WJP.

27. In the following four days, Defendants scrambled to purportedly amend the StrutCo Stockholders Agreement to add a call option which previously did not exist. The late addition of this call option ostensibly enabled StrutCo to purchase McCraw's StrutCo Class A Shares (the "January 26, 2024 Amendment"). A copy of the January 26, 2024 Amendment is attached and incorporated by reference as **Exhibit 2**.

28. Specifically, the January 26, 2024 Amendment purported to add a Section 3.3 to the StrutCo Stockholders Agreement, which provides that upon a stockholder's voluntary termination of employment with an affiliate of StrutCo, an involuntary transfer will "automatically and immediately" be deemed to have occurred, triggering StrutCo's right to purchase such stockholder's shares at a price determined pursuant to Section 3.2 of the StrutCo Stockholders Agreement.

---

[3] McCraw was also granted 21.505 shares of Class B Common Stock through a Restricted Stock Award Agreement and .234 shares of StrutCo's Class C Common Stock through a Restricted Stock.

5

29. Prior to execution of the Amendment dated January 26, 2024 by the other Stockholders, neither StrutCo nor anyone on its behalf sent a copy of the proposed Amendment to McCraw for his information, review, comment, negotiation, or potential execution.

30. Following McCraw's voluntary resignation from WJ Partners, Wall had authority to act on behalf of StrutCo and the other Defendants to interface with McCraw for the disposition of his shares in StrutCo.

31. Five days later, on January 31, 2024, Wall, as a director of StrutCo and otherwise as an agent for StrutCo and the other Defendants, held an in-person meeting with McCraw, where Wall represented to McCraw, via a visual presentation, that McCraw's StrutCo Class A Shares had little to no value, but that if McCraw would relinquish his StrutCo Class A Shares, in exchange for forgiveness of a debt owed by McCraw to Wall,[4] Defendants would agree to a "walk away."

32. In that meeting, Wall, as director of StrutCo and otherwise as an agent for StrutCo and the other Defendants, first notified McCraw of the January 26, 2024 Amendment, and willfully misrepresented to McCraw that StrutCo therefore held a call right to purchase McCraw's StrutCo Class A Shares pursuant to Section 3.3 of the StrutCo Stockholders Agreement (as purportedly amended on January 26, 2024).

33. However, contrary to Wall's misrepresentation of the value of McCraw's StrutCo Shares, McCraw's StrutCo Shares are extremely valuable.

34. McCraw explicitly requested that Wall provide the valuation presentation that had been shown to McCraw. Wall refused such request.

---

[4] Wall loaned McCraw $91,876.00 pursuant to a promissory note dated March 1, 2019 (the "Note"). A copy of the Note is attached and incorporated by reference as **Exhibit 3**.

35. Instead, Wall told McCraw that Defendants would wait and see whether McCraw contested the initial valuations presented, and threatened that if McCraw did challenge such valuations, Defendants would respond aggressively by valuing McCraw's StrutCo Class A Shares in a manner even more unfavorable to McCraw.

36. McCraw disputed Defendants' valuation of his StrutCo Class A Shares, conveyed his disappointment about Defendants' handling of the matter, and responded that he would further evaluate whether Defendants' attempt to purchase his StrutCo Class A Shares was even possible under the governing documents.

37. Only two days later, in a letter dated February 2, 2024 (the "StrutCo Redemption Letter"), StrutCo willfully misrepresented to McCraw that it had exercised its call right to purchase McCraw's StrutCo Class A Shares pursuant to Section 3.3 of the StrutCo Stockholders Agreement (as purportedly amended on January 26, 2024). A copy of the StrutCo Redemption Letter is attached and incorporated by reference as **Exhibit 4**.

38. Critically, according to the StrutCo Redemption Letter, StrutCo contends that the newly added Section 3.3 to the StrutCo Stockholders Agreement applies to McCraw's StrutCo Class A Shares. Section 3.3 states in pertinent part:

> 3.3 <u>Call Right</u>. In the event that the employment of any Stockholder by the Company or any Affiliate of the Company ends, voluntarily or involuntarily, for any reason, or upon such Stockholder's death or disability, **an Involuntary Transfer shall be deemed to have occurred,** *automatically and immediately without any action by the Company,* **and the Company shall have the right to purchase all or a portion (from time to time), at the Company's discretion,** of such Stockholder's Stock pursuant to the provisions of <u>Section 3.2</u>.

[*See* Ex. 2 (emphasis added)].

39. However, Section 3.3 does not—and cannot—apply to McCraw because (1) he did not consent to the January 26, 2024 Amendment and (2) he was not an employee of StrutCo or any of its affiliates at the time such purported amendment.

40. Indeed, Section 11.4 of the StrutCo Stockholders Agreement states:

> **[n]o amendment of this Agreement that would**, on its face or as a result of any action that could be taken as a result of such amendment, **materially and adversely affect the rights, interests, or privileges of any Stockholder** . . . **shall be effective without the prior written consent of such Stockholder**[.]"

[*See* Ex. 1, § 11.4 (emphasis added)].

41. The addition of Section 3.3 would materially and adversely affect McCraw's rights and interests as a stockholder, because it purports to give StrutCo a call option as to his StrutCo Class A Shares at a price to which he did not agree.

42. Therefore, McCraw's consent was required in order to make Section 3.3 applicable to his StrutCo Class A Shares—but he did not ever consent to the January 26, 2024, Amendment.

43. Because the January 26, 2024 Amendment purporting to add Section 3.3 was not effectuated as required by the StrutCo Stockholders Agreement, it is invalid and unenforceable as a matter of law.

44. Therefore, StrutCo does not in fact have a call right with regard to McCraw's StrutCo Class A Shares.

45. In addition, paragraph 7 of the January 26, 2024 Amendment states "This Amendment shall become effective as of the date first written above, which is the date as of which this Amendment was executed by the Company and the requisite stockholders." [*See* Ex. 2].

8

46. The "date first written above" in the January 26, 2024 Amendment is January 26, 2024.

47. McCraw was not an employee of StrutCo or any of its affiliates, including WJ Partners, as of January 26, 2024. Therefore, by the plain terms of Section 3.3, it is impossible for an involuntary transfer to have occurred and for the associated call right to have vested in StrutCo with respect to McCraw's StrutCo Class A Shares as of the purported adoption of the Amendment dated January 26, 2024 to present.

48. Instead, McCraw may, but is not required to, offer to sell his StrutCo Class A Shares at a price he determines pursuant to the terms set forth in Section 3.1 and in Article IV of the StrutCo Stockholders Agreement.

49. Despite this, on February 7, 2024, StrutCo and the other Defendants, by and through their agent Wall, sent McCraw an e-mail containing a document with valuations of McCraw's StrutCo Shares. The valuations communicated via this February 7, 2024 email were even lower than the valuations communicated to McCraw in the January 31, 2024 meeting. Regardless, the valuations transmitted via the February 7, 2024 email are significantly less than the fair market value for McCraw's StrutCo Shares and, with respect to his Class A Shares, are significantly less than he would sell them for.

**FIRST CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(PURSUANT TO FED. CIV. P. 57, 28 U.S.C. §§ 2201 AND 2202 AND/OR 10 DEL. C. §§ 6501-6505)**

50. The preceding paragraphs are incorporated by reference as if stated herein verbatim.

51. Pursuant to Rule 57, FRCP, 28 U.S.C. §§ 2201 and 2202 and/or 10 Del. C. §§ 6501-6505, this Court has the power to make declaratory judgments regarding the rights and legal relations of parties under an agreement, including stockholder agreements.

52. The StrutCo Stockholders Agreement is a valid and enforceable contract, and its language is plain and unambiguous.

53. Section 11.4 of the StrutCo Stockholders Agreement states:

> no amendment of this Agreement that would, on its face or as a result of any action that could be taken as a result of such amendment, materially and adversely affect the rights, interests, or privileges of any Stockholder . . . shall be effective without the prior written consent of such Stockholder[.]

[*See* Ex. 1, § 11.4].

54. The January 26, 2024 Amendment purportedly added Section 3.3 to the StrutCo Stockholders Agreement, providing that, upon a stockholder's voluntary termination of employment with an affiliate of StrutCo, an involuntary transfer will be deemed to have occurred "automatically and immediately" and StrutCo would then have the right to purchase such stockholder's shares. [*See* Ex. 2, Section 3.3].

55. Section 3.3 clearly would materially and adversely affect McCraw's rights and interests as a stockholder because it purports to give StrutCo a call option as to his StrutCo Class A Shares at a price to which he did not agree.

56. Therefore, McCraw's consent was required in order to make Section 3.3 applicable to his StrutCo Class A Shares—but McCraw never consented to the January 26, 2024 Amendment.

57. The addition of the January 26, 2024 Amendment to the StrutCo Stockholder Agreement which purports to vest StrutCo with a call right with respect to McCraw's StrutCo Shares violates the plain language of the StrutCo Stockholders Agreement, including without

limitation, Section 11.4 (requiring that any such amendment would not be effective without the prior written consent of McCraw).

58. Despite the impossibility of the January 26, 2024 Amendment applying to McCraw's Class A Common Stock, Defendants attempted to mislead McCraw into believing that StrutCo had a call right to the same.

59. Defendants' willful attempt to amend the StrutCo Stockholders Agreement improperly, with knowledge that such attempt violated the terms of the StrutCo Stockholders Agreement, was calculated to imbue StrutCo with a call right to wrongfully seize McCraw's StrutCo Class A Shares. Defendants' egregious attempt to convince McCraw that StrutCo held a call right with regard to his Class A Shares and to exercise such call right for StrutCo's and their own pecuniary and other benefit, and to the detriment of a minority shareholder such as McCraw, was unfair, misleading, unreasonable, and amounts to *per se* bad faith.

60. Further, Section 2.1 of the StrutCo Stockholders Agreement provides that:

> Any purported or attempted Transfer of Stock in violation of, or without full compliance with, the terms and conditions of this Agreement shall be deemed for all purposes to be without legal effect and void *ab initio* and shall not be recognized by the Company nor recorded in the stock ownership ledger or records of the Company.

[*See* Ex. 1, § 2.1].

61. Therefore, McCraw seeks declaratory relief, to obtain a determination of the legal rights of the parties under the StrutCo Stockholders Agreement, without awaiting a violation of such rights and to afford relief from uncertainty as to the interpretation of the StrutCo Stockholders Agreement before further breaches thereof occur.

62. A real and substantial concrete dispute exists as to the disagreement between the validity regarding the purported January 26, 2024 Amendment.

11

63. There has been a definite assertion of legal rights and a positive legal duty which has been denied by Defendants.

64. This dispute is ripe and appropriate for judicial determination.

65. Accordingly, McCraw respectfully seeks a declaratory judgment finding that, according to the plain language of the StrutCo Stockholders Agreement, the purported January 26, 2024 Amendment is void *ab initio* and unenforceable as a matter of law.

66. Should McCraw prove to be the prevailing party on his claim for declaratory relief, McCraw requests the Court to make such award of reasonable attorneys' fees and/or costs as agreed to in the StrutCo Stockholders Agreement, and grant all further relief as deemed necessary and proper.

### SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

67. The preceding paragraphs are incorporated by reference as if stated herein verbatim.

68. To sustain a breach of contract claim, the plaintiff must prove the existence of a contract, the breach of an obligation imposed by that contract, and resulting damage to the plaintiff. *Lorenzetti v. Hodges*, 62 A.3d 1224 (D. Del. 2013) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

69. The StrutCo Stockholders Agreement is a valid and binding contract between and among its signatories, including McCraw and Defendants.

70. Regarding amendments, Section 11.4 of the StrutCo Stockholders Agreement states:

> no amendment of this Agreement that would, on its face or as a result of any action that could be taken as a result of such amendment, materially and adversely affect

12

    the rights, interests, or privileges of any Stockholder . . . shall be effective without the prior written consent of such Stockholder[.]

[*See* Ex. 1, § 11.4].

71. The attempted January 26, 2024 Amendment by Defendants would materially and adversely affect McCraw's rights and interests as a stockholder because it purports to give StrutCo a call right as to his StrutCo Class A Shares at a price to which he did not agree.

72. McCraw's consent was required in order to make Section 3.3 applicable to his StrutCo Class A Shares.

73. McCraw did not consent to the January 26, 2024 Amendment.

74. The purported January 26, 2024 Amendment violated the plain language of the StrutCo Stockholders Agreement, including, without limitation, Section 11.4 which requires that such amendments would not be effective without the prior written consent of McCraw.

75. Defendants have breached the StrutCo Stockholders Agreement by, among other things, attempting to amend the StrutCo Stockholders Agreement in violation of the plain language of the StrutCo Stockholders Agreement.

76. This egregious and oppressive conduct by Defendants towards a minority shareholder, such as McCraw, also constitutes breaches of their implied duty of good faith and fair dealing, inherent in every contract.

77. As a direct and proximate cause of Defendants' breaches and improper attempt to enforce the invalid January 26, 2024 Amendment, McCraw has incurred damages, including, but not limited to, reasonable attorneys' fees and costs, which are recoverable by the prevailing party under the StrutCo Stockholders Agreement.

78. McCraw is entitled to an award of damages against Defendants, including, but not limited to, the attorneys' fees and costs incurred in enforcing the StrutCo Stockholders Agreement, and other losses to in amounts to be proven at trial.

### THIRD CAUSE OF ACTION
### CIVIL CONSPIRACY
### (DEFENDANTS WALL, JOHNSON, AND BREEDEN ONLY)

79. The preceding paragraphs are incorporated by reference as if stated herein verbatim.

80. Wall, Johnson, and Breeden (collectively, the "Conspiring Stockholders") knowingly engaged in an overt scheme to effectuate the January 26, 2024 Amendment to the StrutCo Stockholder's Agreement, without the consent of McCraw, and then presented such invalid amendment in an attempt to force a minority shareholder to sell his StrutCo Class A Shares at a price to which he did not agree pursuant to such invalid amendment. The Conspiring Stockholders had a meeting of the minds with respect to this scheme and associated acts in furtherance of such scheme and were aware of the wrongful conduct and harm to McCraw at the beginning of their agreement.

81. At all times relevant to this third cause of action for civil conspiracy, Wall, Johnson, and Breeden each acted in their individual capacities as beneficial owners of the shares held by the Wall Trust, the Johnson Trust, the SPJ ESA Trust, and the GDJ ESA Trust.

82. As a direct and proximate result of this scheme, McCraw has incurred damages, including, but not limited to, reasonable attorneys' fees and costs, and other losses in amounts to be proven at trial. McCraw is also entitled to punitive damages.

## FOURTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTIES)

83. The preceding paragraphs are incorporated by reference as if stated herein verbatim.

84. The Controlling Majority Stockholders owe fiduciary duties to McCraw because they are directors and/or controlling stockholders of StrutCo, and McCraw is a minority stockholder of StrutCo. Such fiduciary duties include the duties of loyalty and due care.

85. All directors of Delaware corporations are fiduciaries of the corporations' stockholders. *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989). Similarly, controlling stockholders are fiduciaries of their corporations' minority stockholders. *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987).

86. Even though the Controlling Majority Stockholders, separately, may not own a majority of StrutCo's shares, the law treats them collectively as StrutCo's controlling stockholders because they form a control group, bound together by common ownership or other arrangement. *See Dubroff v. Wren Holdings, LLC*, 2009 WL 1478697, at *3 (Del.Ch. May 22, 2009) ("Delaware case law has recognized that a number of shareholders, each of whom individually cannot exert control over the corporation . . . can collectively form a control group where those shareholders are connected in some legally significant way – e.g., by contract, common ownership, agreement or other arrangement – to work together toward a shared goal. In that case, the control group is accorded controlling shareholder status, and, therefore, its members owe fiduciary duties to their fellow shareholders.").

87. The Controlling Majority Stockholders used their fiduciary positions to secure rights and benefits for themselves that they would not have been able to secure had they acted in accordance with the StrutCo Stockholders Agreement. They breached their fiduciary duties

15

to McCraw through their last-minute attempt to add the January 26, 2024 Amendment, and subsequent attempt to convince McCraw— a minority shareholder—of its validity and to sell his StrutCo Shares pursuant thereto. Further, the Controlling Shareholders breached their fiduciary duties owed to McCraw by trying to force McCraw to relinquish his StrutCo Class A Shares pursuant to an Amendment purportedly adopted without McCraw's consent.

88. Wall, as a director of StrutCo, breached his fiduciary duties owed to McCraw through his last-minute attempt to add the January 26, 2024 Amendment, and subsequent attempt to convince McCraw—a minority shareholder—of its validity and to sell his StrutCo Shares pursuant thereto. Further, Wall, as a director of StrutCo, breached the fiduciary duties owed to McCraw by trying to force McCraw to relinquish his StrutCo Class A Shares pursuant to an Amendment purportedly adopted without McCraw's consent.

89. The Controlling Shareholders' conduct and Wall's conduct in attempting to adopt the January 26, 2024 Amendment without McCraw's knowledge or consent and thereafter attempting to induce McCraw to sell his StrutCo Shares pursuant thereto, at a price to which McCraw did not agree and did not reflect a fair value, was willful, reckless, and unfair and constitutes bad faith.

90. Such willful, reckless, unfair, and bad faith conduct by the Controlling Majority Stockholders and by Wall in his capacity as a director of StrutCo, in each case with knowledge that such conduct violated the terms of the StrutCo Stockholders Agreement, amounts to a breach of their fiduciary duties. The Controlling Majority Stockholders and Wall, respectively, used their fiduciary positions to act in a manner inconsistent with and prohibited by the StrutCo Stockholders Agreement and applicable law to the detriment of McCraw, but to the financial

benefit of the Controlling Majority Stockholders. Such willful oppressive conduct constitutes *per se* bad faith.

91. Such conduct also violates Section 11.4 of the StrutCo Stockholders Agreement, which requires that such amendments would not be effective without the prior written consent of McCraw.

92. The January 26, 2024 Amendment would materially and adversely affect McCraw's rights and interests as a stockholder because it purports to give create a call right enabling the Controlling Majority Stockholders to force a minority stockholder to sell his StrutCo Class A Shares at a price to which he did not agree.

93. As a direct and proximate cause of the Controlling Stockholders' breaches of fiduciary duties owed to McCraw, McCraw has incurred damages, including, but not limited to, reasonable attorneys' fees and costs, which are recoverable for the prevailing party under the StrutCo Stockholders Agreement.

94. As a direct and proximate cause of Wall's breaches of fiduciary duties owed to McCraw in his role as a director of StrutCo, McCraw has incurred damages, including, but not limited to, reasonable attorneys' fees and costs, which are recoverable for the prevailing party under the StrutCo Stockholders Agreement.

95. McCraw is entitled to an award of damages against the Controlling Majority Stockholders and Wall, including, but not limited to, the attorneys' fees and costs incurred in enforcing the StrutCo Stockholders Agreement, other losses to in amounts to be proven at trial, and punitive damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for:

a. Declaratory judgment that the January 26, 2024 Amendment is invalid and unenforceable as a matter of law;

b. Judgment against Defendants as to the Second Cause of Action in an amount to be determined by a jury;

c. Judgment against Wall, Breeden, and Johnson as to the Third Cause of Action in an amount to be determined by a jury;

d. Judgment against Defendants as to the Fourth Cause of Action in an amount to be determined by a jury;

e. Damages to compensate Plaintiff in connection with the causes of action alleged herein, including, but not limited to, attorneys' fees, costs and expenses;

f. Punitive damages; and

g. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

GALLIVAN, WHITE & BOYD, P.A.

By: */s/ Carter R. Massingill*
John T. Lay, Jr. (Fed. Id. No. 5539)
1201 Main Street, Suite 1200
Post Office Box 7368
Columbia, South Carolina 29202
(803) 779-1833
jlay@gwblawfirm.com

Carter R. Massingill (Fed. Id. No. 11818)
55 Beattie Place, Suite 1200
Post Office Box 10589
Greenville, South Carolina 29201
(864) 271-9580
cmassingill@gwblawfirm.com

Kate C. Mettler (Fed. Id. No. 13032)

18

40 Calhoun Street, Suite 300
Post Office Box 22768
Charleston, South Carolina 29413
(843) 414-8077
kmettler@gwblawfirm.com

*Attorneys for Plaintiff Rhett F. McCraw*

April 17, 2024

Plaintiff Rhett F. McCraw respectfully demands a trial by jury on all claims so triable.

/s/ Carter R. Massingill
Carter R. Massingill (Fed ID No. 11818)